**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **ZAID AL AZAWI, ERNESTO ALANIS, JR., FORREST ALFORD, JON ALLEN, REYNALDO ARREAGA, RONALD CHASE, CHRISTIAN COLON, GREGORY DOOLEY, CODY EDGE, RICHARD ELLIOTT, JUAN GARCIA, ROBERT GARDNER, GARNETT GERLT, PAUL GRANGER, JONATHAN GUAJARDO, CHIMYA JOHNSON, DANA JOHNSON, MAN LEUNG, WELDON NIX, CESAR POSADAS, GUSTAVO RODRIGUEZ, EDWARD RODRIGUEZ, ALEJANDRO SOSA-DELGADO, JOHN SPENCE, ANDREW UMBAUGH, JOSEPH WALDROP, BILL ARELLANO, JIMMY BAINES, ROGER GORAS, KENNETH HAYNES, TONY MALLARD, XAVIER MCCOOK, JOBY VEGA, AND MARVIN EDWARDS,** | **Case No.** |
| **Plaintiffs,** | |
| **v.** | |
| **DIRECTV, INC., DIRECTV, LLC, MASTEC NORTH AMERICA, INC., AND MULTIBAND CORP.,** | |
| **Defendants.** | |

<u>**COMPLAINT**</u>

Plaintiffs Zaid Al Azawi, Ernesto Alanis, Jr., Forrest Alford, Jon Allen, Reynaldo Arreaga, Ronald Chase, Christian Colon, Gregory Dooley, Cody Edge, Richard Elliott, Juan Garcia, Robert Gardner, Garnett Gerlt, Paul Granger, Jonathan Guajardo, Chimya Johnson, Dana Johnson, Man Leung, Weldon Nix, Cesar Posadas, Gustavo Rodriguez, Edward Rodriguez, Alejandro Sosa-Delgado, John Spence, Andrew Umbaugh, Joseph Waldrop, Bill Arellano, Jimmy Baines, Roger Goras, Kenneth Haynes, Tony Mallard, Xavier McCook, Joby

Vega, and Marvin Edwards, by and through their undersigned counsel, for their individual complaints against DIRECTV, Inc. and DIRECTV LLC (together, "DIRECTV"); and MasTec North America, Inc., and Multiband Corp., ("Provider Defendants" or "HSP Defendants") (collectively with DIRECTV, "Defendants"); hereby state as follows:

## NATURE OF SUIT

1.      DIRECTV—the largest provider of satellite television services in the United States—is responsible for a far reaching "fissured employment"[1] scheme.  In order to expand and service its customer base (topping more than 20 million domestic subscribers), DIRECTV has engaged tens of thousands of technicians—including each of the Plaintiffs in this case—to install and repair its satellite systems. Although DIRECTV requires these technicians to drive a DIRECTV-branded vehicle, wear a DIRECTV uniform, and perform their work according to DIRECTV's exacting policies and procedures, DIRECTV disclaims any legal relationship with these workers, tagging them instead as "independent contractors" or employees of subordinate entities (including the named service provider Defendants). But fortunately for these workers, it is the economic reality of the relationship—not DIRECTV's self-serving labels—that controls whether Plaintiffs meet the

---

[1] Fissured employment describes the practice of a large company attempting to shed its role as a direct employer and purporting to disassociate itself from the workers responsible for its products (albeit maintaining tight control over the method, manner, quantity, and quality of production). The practice of outsourcing an employer's responsibilities and obligations to subordinate entities and subcontractors is highly profitable for companies like DIRECTV, but results in stagnation of wages and benefits and causes rampant violations of wage-and-hour laws. *See e.g.*, David Weil, *The Fissured Workplace: Why Work Became So Bad for So Many and What Can Be Done to Improve It* (Harvard Univ. Press, Feb. 3, 2014);  David Weil, *Enforcing Labour Standards in Fissured Workplaces: The US Experience*, 22 Econ. & Lab. Rel. Rev. 2, at 33-54 (July 2011).

definition (among the broadest ever legislated) of an "employee" under the Fair Labor Standards Act ("FLSA").

2.      Plaintiffs' claims squarely challenge this dangerous trend, and are not the first to do so. The U.S. Department of Labor ("DOL") has made a priority of investigating and exposing multi-party business arrangements that shirk compliance with the FLSA.  *See* http://wage-hour.net/post/2012/09/25/Fissured-Industry-Enforcement-Efforts-Continue.aspx (last visited Oct. 9, 2014).  The DOL's Misclassification Initiative, launched under Vice President Biden's Middle Class Task Force, is aggressively combating this pervasive issue in order to restore rights denied to individuals.[2]  In September 2011, then-Secretary of Labor Hilda L. Solis announced the signing of a Memorandum of Understanding between the DOL and the Internal Revenue Service (IRS), under which the agencies combine resources and share information to reduce the incidence of misclassification of employees, to help reduce the tax gap, and to improve compliance with federal labor laws.  The DOL's Wage and Hour Division is also partnering with individual states whose workers are being subjected to this practice.[3]

---

[2] "The misclassification of employees as something else, such as independent contractors, presents a serious problem, as these employees often are denied access to critical benefits and protections—such as family and medical leave, overtime compensation, minimum wage pay and Unemployment Insurance—to which they are entitled. In addition, misclassification can create economic pressure for law-abiding business owners, who often struggle to compete with those who are skirting the law. Employee misclassification also generates substantial losses for state Unemployment Insurance and workers' compensation funds." *See* http://www.dol.gov/opa/media/press/whd/WHD20120257.htm (last visited Oct. 9, 2014); *see generally*, DOL Misclassification Initiative, available at http://www.dol.gov/whd/workers/misclassification/ (last visited Oct. 9, 2014).

[3] *See, e.g.*, DOL Misclassification Initiative, *available at* http://www.dol.gov/whd/workers/misclassification/#stateDetails (last visited Oct. 9, 2014).

3.      The individual Plaintiffs joined herein intend to prove in this litigation that they are legally employed by DIRECTV and, where applicable, one or more of the named Provider Defendants, and are entitled to the overtime and minimum wage protections of the FLSA.

## JURISDICTION AND VENUE

4.      The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiffs' individual FLSA claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district and Defendants are each subject to personal jurisdiction in this district.

## PARTIES

6.      Zaid Al Azawi is an individual residing in Houston, Texas.

7.      Ernesto Alanis is an individual residing in Harlingen, Texas.

8.      Forrest Alford is an individual residing in Wichita, Kansas.

9.      Jon Allen is an individual residing in Plano, Texas.

10.     Reynaldo Arreaga is an individual residing in Eagle Pass, Texas.

11.     Ronald Chase is an individual residing in Copperas Cove, Texas.

12.     Christian Colon is an individual residing in Round Rock, Texas.

13.     Gregory Dooley is an individual residing in Lindon, Texas.

14.     Cody Edge is an individual residing in Texarkana, Texas.

15.     Richard Elliott is an individual residing in Atlanta, Texas.

16.     Juan Garcia is an individual residing in Harlingen, Texas.

17.    Robert Gardner is an individual residing in Harlingen, Texas.

18.    Garnett Gerlt is an individual residing in Euless, Texas.

19.    Paul Granger is an individual residing in Queen City, Texas.

20.    Jonathan Guajardo is an individual residing in Harlingen, Texas.

21.    Chimya Johnson is an individual residing in Houston, Texas.

22.    Dana Johnson is an individual residing in Gilmer, Texas.

23.    Man Leung is an individual residing in Sugar Land, Texas.

24.    Weldon Nix is an individual residing in Arlington, Texas.

25.    Cesar Posadas is an individual residing in Pflugerville, Texas.

26.    Edward Rodriguez is an individual residing in Harlingen, Texas.

27.    Gustavo Rodriguez is an individual residing in San Benito, Texas.

28.    Alejandro Sosa-Delgado is an individual residing in Forney, Texas.

29.    John Spence is an individual residing in Linden, Texas.

30.    Andrew Umbaugh is an individual residing in College Station, Texas.

31.    Joseph Waldrop is an individual residing in Texarkana, Texas.

32.    Bill Arellano is an individual residing in Austin, Texas.

33.    Jimmy Baines is an individual residing in Missouri City, Texas.

34.    Roger Goras is an individual residing in Fort Worth, Texas.

35.    Kenneth Haynes is an individual residing in Melissa, Texas.

36.    Tony Mallard is an individual residing in Arlington, Texas.

37.    Xavier McCook is an individual residing in Missouri City, Texas.

38.    Joby Vega is an individual residing in Pflugerville, Texas.

39.    Marvin Edwards is an individual residing in Hemet, Texas.

40.     DIRECTV, Inc. is a Delaware corporation with its principal place of business in El Segundo, California. DIRECTV, Inc. does business as DIRECTV Home Services. In December 2011, DIRECTV, Inc. merged with another DIRECTV entity, DIRECTV Operations, LLC. The resulting entity is known as DIRECTV, LLC, which is a Delaware corporation with its principal place of business in El Segundo, California.

41.     Defendant MasTec North America, Inc. ("MasTec") is a Florida corporation with its principal place of business in Coral Gables, Florida.

42.     Defendant Multiband Corp. ("Multiband") is a Minnesota corporation, with its principal place of business in New Hope, Minnesota.

43.     All Plaintiffs performed work for DIRECTV and, where applicable, one or more Provider Defendant in Texas.

44.     All Defendants do business or have done business in Texas.

## COMMON FACTUAL ALLEGATIONS

### DIRECTV's Fissured Employment Scheme: The Provider Network

45.     Plaintiffs' principal job duty as technicians was to install and repair DIRECTV satellite television service.

46.     DIRECTV oversees a network of Providers (the "Provider Network") who supply DIRECTV this workforce of technicians, either by serving as their ostensible employer, or by "subcontracting" with technicians dubbed "independent contractors."

47.     DIRECTV conceived of, formed, and manages DIRECTV's Provider Network. DIRECTV operates its Provider Network nationwide from its headquarters in El Segundo, California, reaching each state where Plaintiffs work.

48.     The Provider Network is comprised of principal intermediaries that DIRECTV dubs its Home Service Providers ("HSPs"), secondary intermediaries deemed "Secondary Providers," as well as a patchwork of largely captive entities that are generally referred to as subcontractors.

49.     Upon information and belief, at all relevant times, DIRECTV was the primary, if not the only, client of the Providers and was the source of substantially all of each Provider's income.

50.     During the relevant time period, and as alleged in more detail *infra*, many HSPs were subsumed by DIRECTV through a series of mergers and acquisitions, leaving, for purposes relevant to the instant cases, only HSPs DirectSat, MasTec, and Multiband.

51.     DIRECTV controls the Provider Network through a variety of means including detailed agreements known as Home Services Provider Agreements, Services Provider Agreements, and Secondary Provider Agreement of Equipment Installation and Service (collectively referred to herein as the "Provider Agreements"). The Provider Agreements establish parallel—indeed, effectively identical—business relationships between DIRECTV and each HSP and subcontractor. The salient provisions of each Provider Agreement contain the same policies, procedures, performance standards, and payment method requirements.

52.     The Provider Agreements specify DIRECTV's mandatory policies and procedures. And they obligate DIRECTV's intermediaries to hand them down to the technicians.

53.     The Provider Agreements enable DIRECTV to control nearly every facet of the technician's work, down to the "DIRECTV" shirts they are required to wear and the

"DIRECTV" ID card they must show customers.  DIRECTV assigns each technician a scope of work described in a Work Order that DIRECTV itself delivers to each technician via a centralized computer software system that DIRECTV controls.  DIRECTV mandates particularized methods and standards of installation to assure DIRECTV's equipment is installed according to the dictates of DIRECTV's policies and procedures. As a consequence, each technician's essential job duties are virtually identical no matter where performed and no matter which intermediary the technician is ostensibly working for.

54.     Plaintiffs typically started their workdays after receiving daily work schedules assigned through DIRECTV's dispatching systems. DIRECTV used a database program known as SIEBEL to coordinate the assignment of particular work orders to technicians using each technician's unique "Tech ID Number."

55.     After receiving their daily work schedules, Plaintiffs typically called the customer contact for each of their assigned jobs to confirm the timeframe within which the technician expected to arrive at the customer's home. Plaintiffs then traveled to their first assigned job and thereafter continued to complete the jobs assigned by Defendants in the prescribed order on the daily work schedule. Upon arriving at each job site, Plaintiffs were required to check-in by telephone with DIRECTV via its dispatching system. At the end of an assigned job, Plaintiffs were required to report to DIRECTV that the installation was complete and, thereafter, worked directly with DIRECTV employees to activate the customer's service.

56.     When performing DIRECTV's work, Plaintiffs were required by Defendants to wear a uniform with DIRECTV insignia on it. Additionally, Plaintiffs were required to display DIRECTV insignia on vehicles driven to customers' homes for installations.

Plaintiffs were required to purchase these uniforms and insignia, typically from Defendants.

57.     Although DIRECTV controls nearly every aspect of the technicians' work, Defendants insist that the technicians are not employees of DIRECTV, and often claim that they are not employees at all, rather that they are "independent contractors."

58.     Plaintiffs will show that the Provider Network is purposefully designed to exercise the right of control over its technician corps while avoiding the responsibility of complying with the requirements of the FLSA.

**DIRECTV's Workforce Consolidation: Acquisition of Providers by Defendants**

59.     DIRECTV's control over its purportedly independent provider partners is integral to its fissured employment scheme. So much so that DIRECTV regularly infuses these partners with what it labels internally as "extraordinary advance payments" in order to keep their dependent operations afloat while preserving an outward appearance of independence. When litigation or other circumstances make the "independent" relationship a negative for DIRECTV, DIRECTV simply absorbs these entities by acquisition.

60.     The absorption by DIRECTV is seamless, simply a resetting of titles without the functional modifications that normally accompany an arm's length acquisition. To date, there are only three "independent" HSPs still in operation—including the named Provider Defendants, MasTec and Multiband. Since DIRECTV developed its HSP Network, DIRECTV or one of these three remaining HSPs has purchased at least thirteen prior HSPs.[4] Below is

_____

[4] These include AeroSat, Bruister, Bluegrass Satellite and Security, ConnecTV, Directech NE, Directech SW, DTV Home Services II, LLC, Halsted Communications, Ironwood Communications, JP&D Digital Satellite, Michigan Microtech, Mountain Satellite and Security, and Skylink.

a description of the prior HSPs for which the Plaintiffs technicians worked and how those HSPs were ultimately acquired by DIRECTV, MasTec, or Multiband.

**Directech SW**

61.     Upon information and belief, Multiband Corporation acquired Directech SW, including all of its facilities. After the acquisition, Multiband Corporation conducted business out of Directech SW's locations, and personnel from Directech SW worked for Multiband Corporation. Many of Directech SW's employees were hired by Multiband Corporation.

62.     Upon information and belief, working conditions for installation technicians who worked for Directech SW remained substantially the same after Multiband Corporation acquired Directech SW. Likewise, technicians, including Plaintiffs, had substantially the same job(s) after Multiband Corporation acquired Directech SW. There were no broad changes to job functions, job titles, job responsibilities, and/or supervisors, and technicians' pay remained the same.

**DTV Home Services II, LLC**

63.     Upon information and belief, DIRECTV acquired DTV Home Services II, LLC, including all of its facilities. After the acquisition, DIRECTV conducted business out of DTV Home Services II, LLC's locations, and personnel from DTV Home Services II, LLC worked for DIRECTV. Many of DTV Home Services II, LLC's employees were hired by DIRECTV.

64.     Upon information and belief, working conditions for installation technicians who worked for DTV Home Services II, LLC remained substantially the same after DIRECTV acquired DTV Home Services II, LLC. Likewise, technicians, including Plaintiffs, had substantially the same job(s) after DIRECTV acquired DTV Home Services II, LLC. There

were no broad changes to job functions, job titles, job responsibilities, and/or supervisors, and technicians' pay remained the same.

### JP&D Digital Satellite

65. Upon information and belief, JP&D Digital Satellite was acquired by DTV Home Services II, LLC, which was then acquired by DIRECTV. DIRECTV ultimately acquired all of JP&D Digital Satellite's facilities. After the acquisition, DIRECTV conducted business out of JP&D Digital Satellite's locations, and personnel from JP&D Digital Satellite worked for DIRECTV. Many of JP&D Digital Satellite's employees were hired by DIRECTV.

66. Upon information and belief, working conditions for installation technicians who worked for JP&D Digital Satellite remained substantially the same after DTV Home Services II, LLC, and then DIRECTV, acquired JP&D Digital Satellite. Likewise, technicians, including Plaintiffs, had substantially the same job(s) after DTV Home Services II, LLC, and then DIRECTV, acquired JP&D Digital Satellite. There were no broad changes to job functions, job titles, job responsibilities, and/or supervisors, and technicians' pay remained the same.

### Skylink Ltd.

67. Upon information and belief, DirectSat USA, LLC acquired Skylink Ltd., including all of its facilities. After the acquisition, DirectSat USA, LLC conducted business out of Skylink Ltd.'s locations, and personnel from Skylink Ltd. worked for DirectSat USA, LLC. Many of Skylink Ltd.'s employees were hired by DirectSat USA, LLC.

68. Upon information and belief, working conditions for installation technicians who worked for Skylink Ltd. remained substantially the same after DirectSat USA, LLC acquired Skylink Ltd. Likewise, technicians, including Plaintiffs, had substantially the same

job(s) after DirectSat USA, LLC acquired Skylink Ltd. There were no broad changes to job functions, job titles, job responsibilities, and/or supervisors, and technicians' pay remained the same.

**The Economic Reality: DIRECTV and its Provider Network Employ the Technicians**

69.     DIRECTV exerts significant control over the Providers and Plaintiffs regarding the essential terms and conditions of Plaintiffs' employment.

70.     In fact, DIRECTV is the primary, if not the exclusive, client of the Providers, and accounts for the majority, if not all, of their revenue.

71.     Defendants are, and were at all times relevant herein, in the business of, among other things, providing satellite television service to businesses and consumers. Installation and repair of satellite dishes, receivers, and related equipment is an integral part of DIRECTV's business.

72.     Although hiring is generally done at the Providers' level, DIRECTV controls the details of Plaintiffs' day-to-day work.

73.     Through the Providers, DIRECTV exercises significant control over Plaintiffs' daily work lives, including, but not limited to, control over what work Plaintiffs performed, where that work was performed, when that work was performed, and how that work was performed.

74.     Through the Providers, DIRECTV also determined whether Plaintiffs' work merited compensation, including setting the rate of pay to the Providers for the Plaintiffs' work. Providers then administered payroll and provided Plaintiffs with their paychecks.

75.     DIRECTV, through the Providers, exerted control over Plaintiffs sufficient to establish that they employed Plaintiffs. DIRECTV and the Providers constitute employers subject to liability under the FLSA.

76.     DIRECTV required Plaintiffs to hold themselves out as agents of DIRECTV.

77.     DIRECTV promulgates detailed instructions for how installations are to be completed. Plaintiffs received these instructions and performed the work as DIRECTV required. Plaintiffs were not given meaningful discretion in how they performed installations.

78.     DIRECTV publishes training materials that technicians such as Plaintiffs are required to review.

79.     DIRECTV requires that all technicians obtain a certification from the Satellite Broadcasting & Communications Association ("SBCA") before that technician may be assigned DIRECTV work orders. This requirement allows DIRECTV to mandate certain training for all technicians.

80.     DIRECTV utilizes a network of quality control personnel and field managers to oversee the work performed by Plaintiffs.

81.     DIRECTV and Providers' quality control personnel reviewed Plaintiffs' work, and Plaintiffs were subject to chargebacks and/or rollbacks based on those reviews.

82.     Defendants are each engaged in interstate commerce and, upon information and belief, Defendants each gross more than Five Hundred Thousand Dollars in revenue per year.

83.     The net effect of Defendants' policies and practices, instituted by DIRECTV and administered by Provider Defendants, is that Defendants willfully fail to pay minimum

wage and overtime compensation to Plaintiffs, and willfully fail to keep accurate time records in order to save payroll costs.

**The Piece-Rate System: DIRECTV's Unlawful Payment Scheme**

84. As with other aspects of Plaintiffs' work, DIRECTV effectively controlled Plaintiffs' pay through the common policies and practices mandated in its Provider Agreements.

85. Every Plaintiff was paid pursuant to the piece-rate payment scheme that is utilized throughout DIRECTV's network.

86. There was no contract, memorandum, or other document between Plaintiffs and Defendants properly memorializing or explaining this pay system.

87. Under this system, Plaintiffs were not paid for all hours they worked for Defendants. Rather, they were paid on a per-task (a/k/a piece rate) basis for satisfactorily completing a DIRECTV-approved satellite installation. The piece-rate system only pays technicians for certain enumerated "productive" tasks but fails to compensate technicians for all necessary work they perform.

88. In addition to the certain tasks DIRECTV designated as compensable, Plaintiffs performed other work each week during the relevant time period for Defendants, such as assembling satellite dishes, driving to and between job assignments, reviewing and receiving schedules, calling customers to confirm installations, obtaining required supplies, assisting other technicians with installations, performing required customer educations, contacting DIRECTV to report in or activate service, working on installations that were not completed, and working on "rollback" installations where Plaintiffs had to return and perform additional work on installations previously completed.

89.     Plaintiffs were not paid for these integral and indispensable tasks that were necessary to their principal activity of installing and repairing DIRECTV satellite television service.

90.     Defendants did not pay Plaintiffs' wages free and clear. Rather, Plaintiffs were subjected to "chargebacks" wherein Defendants would deduct amounts from Plaintiffs' pay if there were issues with an installation, or questions from the customer, generally up to 90 days after the customer's service was activated. The chargeback would occur for a variety of reasons, many of which were out of Plaintiffs' control, including, for example, faulty equipment, improper installation, customer calls regarding how to operate their remote control, or a customer's failure to give greater than a 95% satisfaction rating for the services provided by the technician.

91.     In addition to chargebacks, those technicians who were misclassified as independent contractors were also required to purchase supplies necessary to perform installations, such as screws, poles, concrete, and cables. Nor were these independent contractors paid an overtime premium for work done beyond 40 hours in a workweek.

92.     The required purchase of these supplies for Defendants' financial benefit reduced the wages of these technicians, including overtime pay.

93.     Plaintiffs routinely worked more than 40 hours per week for Defendants, as alleged in more detail below.

94.     Plaintiffs were not paid the overtime premium required by applicable law for work done beyond 40 hours in a given workweek.

95.     Defendants' policy and practice of imposing "chargebacks," failing to compensate Plaintiffs for all hours worked, and failing to reimburse Plaintiffs' necessary

business expenses resulted in Plaintiffs routinely working more than forty hours in a work week while being denied overtime pay and being subjected to an effective wage rate below that required by applicable law.

96.     Plaintiffs intend to prove that Defendants' piece-rate pay system constitutes an effort to deliberately deny Plaintiffs earned wages and overtime compensation in violation of the FLSA.

## LITIGATION HISTORY

### *Lang v. DIRECTV*

97.     A number of Plaintiffs in this case, including Zaid Al Azawi, Ernesto Alanis, Jr., Jon Allen, Reynaldo Arreaga, Ronald Chase, Christian Colon, Cody Edge, Richard Elliott, Juan Garcia, Robert Gardner, Garnett Gerlt, Paul Granger, Jonathan Guajardo, Dana Johnson, Man Leung, Weldon Nix, Cesar Posadas, Gustavo Rodriguez, Edward Rodriguez, Alejandro Sosa-Delgado, John Spence, Andrew Umbaugh, and Joseph Waldrop, previously opted in to a conditionally certified FLSA action pending in the Eastern District of Louisiana styled *Lang v. DIRECTV, et al.*, No. 10-1085-NJB.  The *Lang* case was pending as a collective action until the court, on August 30, 2013, granted the parties' joint motion decertifying the class, dismissed the opt-in plaintiffs' claims without prejudice to pursue the individual claims raised herein, and ordered the statute of limitations for each opt-in plaintiff to continue to be tolled for 60 days from the date of the order. *Lang v. DIRECTV*, Case No. 10-1085-NJB (E.D. La.) (Docs. 466, 466-1).

### *Acfalle v. DIRECTV*

98.     Within the 60 days granted by the *Lang* court, Plaintiffs Zaid Al Azawi, Ernesto Alanis, Jr., Jon Allen, Reynaldo Arreaga, Ronald Chase, Christian Colon, Gregory

Dooley, Cody Edge, Richard Elliott, Juan Garcia, Robert Gardner, Garnett Gerlt, Paul Granger, Jonathan Guajardo, Chimya Johnson, Dana Johnson, Man Leung, Weldon Nix, Cesar Posadas, Gustavo Rodriguez, Edward Rodriguez, Alejandro Sosa-Delgado, John Spence, Andrew Umbaugh, Joseph Waldrop, and also Forrest Alford, Gregory Dooley, and Chimya Johnson, filed an action in the Central District of California on November 1, 2013. *Acfalle v. DirecTV*, Case No. 13-8108 ABC (Ex) (Doc. 1) (amended on December 23, 2013, by Doc. 9). On July 22, 2014, the court entered an order granting, in part, Defendants' Motions to Sever Claims of Plaintiffs. (Doc. 71) In that order, the court "dropped" 277 plaintiffs with FLSA-only claims, dismissing them without prejudice to refile their claims closer to their home states or where they were employed, that is, "where they performed their work." (Doc. 71, at 5, 8.)  The court tolled the statute of limitations for 90 days to permit Plaintiffs to refile their claims. (Doc. 71, at 8.)

99.     Within the 90 days granted by the *Acfalle* court, Plaintiffs Zaid Al Azawi, Ernesto Alanis, Jr., Forrest Alford, Jon Allen, Reynaldo Arreaga, Ronald Chase, Christian Colon, Gregory Dooley, Cody Edge, Richard Elliott, Juan Garcia, Robert Gardner, Garnett Gerlt, Paul Granger, Jonathan Guajardo, Chimya Johnson, Dana Johnson, Man Leung, Weldon Nix, Cesar Posadas, Gustavo Rodriguez, Edward Rodriguez, Alejandro Sosa-Delgado, John Spence, Andrew Umbaugh, and Joseph Waldrop filed the instant Complaint, joining their individual claims against Defendants.

### *Arnold v. DIRECTV*

100.     Plaintiffs Bill Arellano, Jimmy Baines, Roger Goras, Kenneth Haynes, Tony Mallard, Xavier McCook, and Joby Vega previously filed consents to become party plaintiffs in *Arnold v. DIRECTV*, No. 10-0352-JAR, originally filed on March 2, 2010, pending in the

Eastern District of Missouri. Pursuant to a Proposed Case Management Plan (Doc. 200) and Amended Case Management Order (Doc. 216), the court redefined the claims into subclasses (Doc. 220, Second Amended Complaint) and entered an order which, in pertinent part, directed Plaintiffs to decertify and dismiss the claims of certain opt-in plaintiffs, including Bill Arellano, Jimmy Baines, Roger Goras, Kenneth Haynes, Tony Mallard, Xavier McCook, and Joby Vega, without prejudice to pursue the individual claims raised herein, and ordered the statute of limitations for each opt-in plaintiff to continue to be tolled for 90 days from the date of the order. *Arnold v. DIRECTV*, Case No. 10-0325-JAR (E.D. Mo.) (Doc. 221, Notice of Voluntary Decertification).[5]

101.     Within the 90 days granted by the *Arnold* court, Plaintiffs Bill Arellano, Jimmy Baines, Roger Goras, Kenneth Haynes, Tony Mallard, Xavier McCook, and Joby Vega joined their individual claims in this action.

## PLAINTIFFS' CLAIMS

### Zaid Al Azawi

102.     Plaintiff Zaid Al Azawi is an individual residing in the state of Texas. Between approximately September 2009 and November 2010, Zaid Al Azawi routinely worked more than 40 hours per week as a technician for DIRECTV, Multiband, and Directech SW in the state of Texas, and was unlawfully deprived of overtime compensation.

103.     In fact, Zaid Al Azawi spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

---

[5] Plaintiffs Jimmy Baines and Joby Vega are not identified on the list of opt-in plaintiffs dismissed from *Arnold* because certain of their claims – those for time served as a W-2 employee of a HSP and not for time claimed herein – remain active in *Arnold*.

104. Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Zaid Al Azawi for all hours worked, and failing to reimburse Zaid Al Azawi's necessary business expenses) resulted in Zaid Al Azawi being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

105. Zaid Al Azawi brings claims against DIRECTV.

**Ernesto Alanis, Jr.**

106. Plaintiff Ernesto Alanis, Jr., is an individual residing in the state of Texas. Between approximately September 2010 and July 2011, Ernesto Alanis, Jr. routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

107. In fact, Ernesto Alanis, Jr. spent approximately 44 hours per week performing tasks for the benefit of Defendants, many unpaid.

108. Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Ernesto Alanis, Jr. for all hours worked, and failing to reimburse Ernesto Alanis, Jr.'s necessary business expenses) resulted in Ernesto Alanis, Jr. being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

109. Ernesto Alanis, Jr. brings claims against DIRECTV and MasTec.

**Forrest Alford**

110. Plaintiff Forrest Alford is an individual residing in the state of Kansas. Between approximately December 2009 and February 2010, Forrest Alford routinely

worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

111.    In fact, Forrest Alford spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

112.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Forrest Alford for all hours worked, and failing to reimburse Forrest Alford's necessary business expenses) resulted in Forrest Alford being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

113.    Forrest Alford brings claims against DIRECTV.

**Jon Allen**

114.    Plaintiff Jon Allen is an individual residing in the state of Texas. Between approximately June 2004 and November 2011, Jon Allen routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

115.    In fact, Jon Allen spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

116.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Jon Allen for all hours worked, and failing to reimburse Jon Allen's necessary business expenses) resulted in Jon Allen being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

117.    Jon Allen brings claims against DIRECTV and MasTec.

**Reynaldo Arreaga**

118.    Plaintiff Reynaldo Arreaga is an individual residing in the state of Texas. Between approximately May 2011 and November 2011, Reynaldo Arreaga routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

119.    In fact, Reynaldo Arreaga spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

120.    Defendants' employment policies and practices herein (*i.e.*, imposing "chargebacks," failing to compensate Reynaldo Arreaga for all hours worked, and failing to reimburse Reynaldo Arreaga's necessary business expenses) resulted in Reynaldo Arreaga being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

121.    Reynaldo Arreaga brings claims against DIRECTV and MasTec.

**Ronald Chase**

122.    Plaintiff Ronald Chase is an individual residing in the state of Texas. Between approximately December 2009 and February 2010, Ronald Chase routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

123.    In fact, Ronald Chase spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

124.    Defendants' employment policies and practices detailed herein (*i.e.*, failing to compensate Ronald Chase for all hours worked and failing to reimburse Ronald Chase's

necessary business expenses) resulted in Ronald Chase being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

125.　Ronald Chase brings claims against DIRECTV.

**Christian Colon**

126.　Plaintiff Christian Colon is an individual residing in the state of Texas. Between approximately 2007 and February 2011, Christian Colon routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

127.　In fact, Christian Colon spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

128.　Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Christian Colon for all hours worked, and failing to reimburse Christian Colon's necessary business expenses) resulted in Christian Colon being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

129.　Christian Colon brings claims against DIRECTV and MasTec.

**Gregory Dooley**

130.　Plaintiff Gregory Dooley is an individual residing in the state of Texas. Between approximately 2008 and the present, Gregory Dooley routinely worked more than 40 hours per week as a technician for DIRECTV and Multiband primarily in the state of Texas, and also in Arkansas, and was unlawfully deprived of overtime compensation.

131.　In fact, Gregory Dooley spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

132.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Gregory Dooley for all hours worked, and failing to reimburse Gregory Dooley's necessary business expenses) resulted in Gregory Dooley being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

133.    Gregory Dooley brings claims against DIRECTV and Multiband.

**Cody Edge**

134.    Plaintiff Cody Edge is an individual residing in the state of Texas. Between approximately 2008 and August 2012, Cody Edge routinely worked more than 40 hours per week as a technician for DIRECTV, Multiband, Skylink, and Directech SW primarily in the state of Texas, and was unlawfully deprived of overtime compensation.

135.    In fact, Cody Edge spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

136.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Cody Edge for all hours worked, and failing to reimburse Cody Edge's necessary business expenses) resulted in Cody Edge being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

137.    Cody Edge brings claims against DIRECTV and Multiband.

**Richard Elliott**

138.    Plaintiff Richard Elliott is an individual residing in the state of Texas. Between approximately May 1999 and the present, Richard Elliott routinely worked more than 40 hours per week as a technician for DIRECTV and Multiband primarily in the state of

Texas, and also in Arkansas and Louisiana, and was unlawfully deprived of overtime compensation.

139.    In fact, Richard Elliott spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

140.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Richard Elliott for all hours worked, and failing to reimburse Richard Elliott's necessary business expenses) resulted in Richard Elliott being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

141.    Richard Elliott brings claims against DIRECTV and Multiband.

**Juan Garcia, Jr.**

142.    Plaintiff Juan Garcia, Jr. is an individual residing in the state of Texas. Between approximately 2004 and the present, Juan Garcia, Jr. routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec, Multiband, and Directech SW primarily in the state of Texas, and also in New Mexico, North Carolina, and Florida, and was unlawfully deprived of overtime compensation.

143.    In fact, Juan Garcia, Jr. spent approximately 55 hours per week performing tasks for the benefit of Defendants, many unpaid.

144.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Juan Garcia, Jr. for all hours worked, and failing to reimburse Juan Garcia, Jr.'s necessary business expenses) resulted in Juan Garcia, Jr. being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

145.     Juan Garcia, Jr. brings claims against DIRECTV and Multiband.

**Robert Gardner**

146.     Plaintiff Robert Gardner is an individual residing in the state of Texas. Between approximately January 2010 and August 2012, Robert Gardner routinely worked more than 40 hours per week as a technician for DIRECT and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

147.     In fact, Robert Gardner spent approximately 50 hours per week performing tasks for the benefit of Defendants, many unpaid.

148.     Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Robert Gardner for all hours worked, and failing to reimburse Robert Gardner's necessary business expenses) resulted in Robert Gardner being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

149.     Robert Gardner brings claims against DIRECTV.

**Garnett Gerlt**

150.     Plaintiff Garnett Gerlt is an individual residing in the state of Texas. Between approximately July 2011 and March 2014, Garnett Gerlt routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the states of Texas and Oklahoma, and was unlawfully deprived of overtime compensation.

151.     In fact, Garnett Gerlt spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

152.     Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Garnett Gerlt for all hours worked, and failing to

reimburse Garnett Gerlt's necessary business expenses) resulted in Garnett Gerlt being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

153.    Garnett Gerlt brings claims against DIRECTV.

**Paul Granger**

154.    Plaintiff Paul Granger is an individual residing in the state of Texas. Between approximately November 2007 and the present, Paul Granger routinely worked more than 40 hours per week as a technician for DIRECTV, Multiband, and Directech SW in the state of Texas, and was unlawfully deprived of overtime compensation.

155.    In fact, Paul Granger spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

156.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Paul Granger for all hours worked, and failing to reimburse Paul Granger's necessary business expenses) resulted in Paul Granger being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

157.    Paul Granger brings claims against DIRECTV and Multiband.

**Jonathan Guajardo**

158.    Plaintiff Jonathan Guajardo is an individual residing in the state of Texas. Between approximately October 2010 and February 2011, Jonathan Guajardo routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

159.     In fact, Jonathan Guajardo spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

160.     Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Jonathan Guajardo for all hours worked, and failing to reimburse Jonathan Guajardo's necessary business expenses) resulted in Jonathan Guajardo being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

161.     Jonathan Guajardo brings claims against DIRECTV and MasTec.

**Chimya Johnson**

162.     Plaintiff Chimya Johnson is an individual residing in the state of Texas. Between approximately August 2009 and April 2014, Chimya Johnson routinely worked more than 40 hours per week as a technician for DIRECTV and Multiband primarily in the state of Texas, and also in Louisiana and Oklahoma, and was unlawfully deprived of overtime compensation.

163.     In fact, Chimya Johnson spent approximately 55 hours per week performing tasks for the benefit of Defendants, many unpaid.

164.     Defendants' employment policies and practices detailed herein (*i.e.*, failing to compensate Chimya Johnson for all hours worked and failing to reimburse Chimya Johnson's necessary business expenses) resulted in Chimya Johnson being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

165.     Chimya Johnson brings claims against DIRECTV and Multiband.

**Dana Johnson**

166.    Plaintiff Dana Johnson is an individual residing in the state of Texas. Between approximately November 2009 and December 2011, Dana Johnson routinely worked more than 40 hours per week as a technician for DIRECTV and Multiband primarily in the state of Texas, and also in Kansas, and was unlawfully deprived of overtime compensation.

167.    In fact, Dana Johnson spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

168.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Dana Johnson for all hours worked, and failing to reimburse Dana Johnson's necessary business expenses) resulted in Dana Johnson being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

169.    Dana Johnson brings claims against DIRECTV and Multiband.

**Man Leung**

170.    Plaintiff Man Leung is an individual residing in the state of Texas. Between approximately 2010 and 2011, Man Leung routinely worked more than 40 hours per week as a technician for DIRECTV, JP&D Digital Satellite, and DTV Home Services II, LLC in the state of Texas, and was unlawfully deprived of overtime compensation.

171.    In fact, Man Leung spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

172.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Man Leung for all hours worked, and failing to reimburse Man Leung's necessary business expenses) resulted in Man Leung being

routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

173. Man Leung brings claims against DIRECTV.

**Weldon Nix**

174. Plaintiff Weldon Nix is an individual residing in the state of Texas. Between approximately October 2011 and October 2012, Weldon Nix routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

175. In fact, Weldon Nix spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

176. Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Weldon Nix for all hours worked, and failing to reimburse Weldon Nix' necessary business expenses) resulted in Weldon Nix being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

177. Weldon Nix brings claims against DIRECTV and MasTec.

**Cesar Posadas**

178. Plaintiff Cesar Posadas is an individual residing in the state of Texas. Between approximately January 2010 and June 2012, Cesar Posadas routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

179. In fact, Cesar Posadas spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

180.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Cesar Posadas for all hours worked, and failing to reimburse Cesar Posadas' necessary business expenses) resulted in Cesar Posadas being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

181.    Cesar Posadas brings claims against DIRECTV and MasTec.

**Edward Rodriguez**

182.    Plaintiff Edward Rodriguez is an individual residing in the state of Texas. Between approximately December 2006 and February 2014, Edward Rodriguez routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

183.    In fact, Edward Rodriguez spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

184.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Edward Rodriguez for all hours worked, and failing to reimburse Edward Rodriguez' necessary business expenses) resulted in Edward Rodriguez being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

185.    Edward Rodriguez brings claims against DIRECTV and MasTec.

**Gustavo Rodriguez**

186.    Plaintiff Gustavo Rodriguez is an individual residing in the state of Texas. Between approximately 2003 and 2010, Gustavo Rodriguez routinely worked more than

40 hours per week as a technician for DIRECTV and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

187.    In fact, Gustavo Rodriguez spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

188.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Gustavo Rodriguez for all hours worked, and failing to reimburse Gustavo Rodriguez' necessary business expenses) resulted in Gustavo Rodriguez being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

189.    Gustavo Rodriguez brings claims against DIRECTV.

**Alejandro Sosa-Delgado**

190.    Plaintiff Alejandro Sosa-Delgado is an individual residing in the state of Texas. Between approximately June 2009 and May 2010, Alejandro Sosa-Delgado routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

191.    In fact, Alejandro Sosa-Delgado spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

192.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Alejandro Sosa-Delgado for all hours worked, and failing to reimburse Alejandro Sosa-Delgado's necessary business expenses) resulted in Alejandro Sosa-Delgado being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

193.    Alejandro Sosa-Delgado brings claims against DIRECTV.

**John Spence**

194.	Plaintiff John Spence is an individual residing in the state of Texas. Between approximately 2008 and the present, John Spence routinely worked more than 40 hours per week as a technician for DIRECTV and Multiband primarily in the state of Texas, and also in Louisiana and Arkansas, and was unlawfully deprived of overtime compensation.

195.	In fact, John Spence spent approximately 55 hours per week performing tasks for the benefit of Defendants, many unpaid.

196.	Defendants' employment policies and practices detailed herein (*i.e.*, failing to compensate John Spence for all hours worked and failing to reimburse John Spence's necessary business expenses) resulted in John Spence being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

197.	John Spence brings claims against DIRECTV and Multiband.

**Andrew Umbaugh**

198.	Plaintiff Andrew Umbaugh is an individual residing in the state of Texas. Between approximately December 2009 and August 2010, Andrew Umbaugh routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

199.	In fact, Andrew Umbaugh spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

200.	Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Andrew Umbaugh for all hours worked, and failing to reimburse Andrew Umbaugh's necessary business expenses) resulted in Andrew Umbaugh

being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

201.     Andrew Umbaugh brings claims against DIRECTV.

**Joseph Waldrop**

202.     Plaintiff Joseph Waldrop is an individual residing in the state of Texas. Between approximately April 2009 and August 2011, Joseph Waldrop routinely worked more than 40 hours per week as a technician for DIRECTV and Multiband in the state of Texas, and was unlawfully deprived of overtime compensation.

203.     In fact, Joseph Waldrop spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

204.     Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Joseph Waldrop for all hours worked, and failing to reimburse Joseph Waldrop's necessary business expenses) resulted in Joseph Waldrop being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

205.     Joseph Waldrop brings claims against DIRECTV and Multiband.

**Bill Arellano**

206.     Plaintiff Bill Arellano is an individual residing in the state of Texas. Between approximately July 2012 and November 2012, Bill Arellano routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

207.     In fact, Bill Arellano spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

208.     Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Bill Arellano for all hours worked, and failing to reimburse Bill Arellano's necessary business expenses) resulted in Bill Arellano being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

209.     Bill Arellano brings claims against DIRECTV and MasTec.

**Jimmy Baines**

210.     Plaintiff Jimmy Baines is an individual residing in the state of Texas. Between approximately September 2009 and June 2010, Jimmy Baines routinely worked more than 40 hours per week as a technician for DIRECTV, JP&D Digital Satellite, and DTV Home Services II, LLC in the state of Texas, and was unlawfully deprived of overtime compensation.

211.     In fact, Jimmy Baines spent approximately 45 hours per week performing tasks for the benefit of Defendants, many unpaid.

212.     Defendants' employment policies and practices detailed herein (*i.e.*, failing to compensate Jimmy Baines for all hours worked and failing to reimburse Jimmy Baines' necessary business expenses) resulted in Jimmy Baines being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

213.     Jimmy Baines brings claims against DIRECTV.

**Roger Goras**

214.     Plaintiff Roger Goras is an individual residing in the state of Texas. Between approximately February 2012 and September 2012, Roger Goras routinely worked more

than 40 hours per week as a technician for DIRECTV and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

215. In fact, Roger Goras spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

216. Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Roger Goras for all hours worked, and failing to reimburse Roger Goras' necessary business expenses) resulted in Roger Goras being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

217. Roger Goras brings claims against DIRECTV and MasTec.

**Kenneth Haynes**

218. Plaintiff Kenneth Haynes is an individual residing in the state of Texas. For approximately six months in 2012, Kenneth Haynes routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

219. In fact, Kenneth Haynes spent in excess of 50 hours per week performing tasks for the benefit of Defendants, many unpaid.

220. Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Kenneth Haynes for all hours worked, and failing to reimburse Kenneth Haynes' necessary business expenses) resulted in Kenneth Haynes being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

221. Kenneth Haynes brings claims against DIRECTV and MasTec.

**Tony Mallard**

222.   Plaintiff Tony Mallard is an individual residing in the state of Texas. Between approximately January 2011 and June 2012, Tony Mallard routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Texas, and was unlawfully deprived of overtime compensation.

223.   In fact, Tony Mallard spent approximately 50 to 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

224.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Tony Mallard for all hours worked, and failing to reimburse Tony Mallard's necessary business expenses) resulted in Tony Mallard being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

225.   Tony Mallard brings claims against DIRECTV and MasTec.

**Xavier McCook**

226.   Plaintiff Xavier McCook is an individual residing in the state of Texas. Between approximately April 2011 and December 2011, Xavier McCook routinely worked more than 40 hours per week as a technician for DIRECTV and Multiband in the state of Texas, and was unlawfully deprived of overtime compensation.

227.   In fact, Xavier McCook spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

228.   Defendants' employment policies and practices detailed herein (*i.e.*, failing to compensate Xavier McCook for all hours worked and failing to reimburse Xavier McCook's

necessary business expenses) resulted in Xavier McCook being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

229.    Xavier McCook brings claims against DIRECTV and Multiband.

**Joby Vega**

230.    Plaintiff Joby Vega is an individual residing in the state of Texas. Between approximately June 2010 and October 2012, Joby Vega routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Texas, and was unlawfully deprived of overtime compensation.

231.    In fact, Joby Vega spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

232.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Joby Vega for all hours worked, and failing to reimburse Joby Vega's necessary business expenses) resulted in Joby Vega being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

233.    Joby Vega brings claims against DIRECTV.

**Marvin Edwards**

234.    Plaintiff Marvin Edwards is an individual residing in the state of Texas. Between approximately 2011 and September 2013, Marvin Edwards routinely worked more than 40 hours per week as a technician for DIRECTV and Multiband in the state of Texas, and was unlawfully deprived of overtime compensation.

235.    In fact, Marvin Edwards spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

236.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Marvin Edwards for all hours worked, and failing to reimburse Marvin Edwards' necessary business expenses) resulted in Marvin Edwards being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

237.    Marvin Edwards brings claims against DIRECTV and Multiband.

## COUNT I

### Violation of the Fair Labor Standards Act of 1938

*By each Plaintiff individually against Plaintiff's previously identified joint-employer-Defendant(s)*

238.    Plaintiffs re-allege all allegations set forth above.

239.    At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

240.    The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

241.    The FLSA also regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 206(a).

242.    Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are enterprises engaged in interstate commerce and their employees are engaged in commerce.

243.    Defendants violated the FLSA by failing to pay all minimum wage and overtime wages due to Plaintiffs, failing to properly calculate Plaintiffs' regular rate of pay for determining the overtime premium pay owed, and improperly deducting money from Plaintiffs' pay.

244.    As to defendant DIRECTV, Plaintiffs are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three years preceding the filing their consent to join forms in the *Lang* or *Arnold* litigation,[6] plus periods of equitable tolling, because DIRECTV acted willfully and knew or showed reckless disregard in their violation of the FLSA.

245.    As to the Provider Defendant(s) against which each Plaintiff makes a claim, Plaintiffs are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three years preceding the filing their (1) their original complaint in this action, *i.e.*, November 1, 2013,[7] or (2) this complaint,[8] plus periods of equitable tolling, because Provider Defendant(s) acted willfully and knew or showed reckless disregard in its violation of the FLSA.

246.    Pursuant to Defendants' policies and practices, Defendants willfully violated the FLSA by refusing and failing to pay Plaintiffs overtime and minimum wages. In the

---

[6] Or from the date of filing this complaint for new Plaintiff Marvin Edwards.

[7] Plaintiffs Zaid Al Azawi, Ernesto Alanis, Jr., Forrest Alford, Jon Allen, Reynaldo Arreaga, Ronald Chase, Christian Colon, Gregory Dooley, Cody Edge, Richard Elliott, Juan Garcia, Robert Gardner, Garnett Gerlt, Paul Granger, Jonathan Guajardo, Chimya Johnson, Dana Johnson, Man Leung, Weldon Nix, Cesar Posadas, Gustavo Rodriguez, Edward Rodriguez, Alejandro Sosa-Delgado, John Spence, Andrew Umbaugh, and Joseph Waldrop.

[8] Plaintiffs Bill Arellano, Jimmy Baines, Roger Goras, Kenneth Haynes, Tony Mallard, Xavier McCook, and Joby Vega, and Marvin Edwards.

course of perpetrating these unlawful practices, Defendants willfully failed to keep accurate records of all hours worked by, compensation paid to, and expenses incurred by Plaintiffs.

247. Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA. As a result thereof, Plaintiffs are each entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants acted in good faith in failing to pay Plaintiffs minimum wage and overtime compensation, Plaintiffs are each entitled to an award of prejudgment interest at the applicable legal rate.

248. As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld from Plaintiffs by Defendants. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

249. Plaintiffs request relief as described below and as permitted by law.

**WHEREFORE**, Plaintiffs demand a trial by jury for all issues so triable, and request the Court enter judgment for Plaintiffs individually and:

a. Award damages for unpaid minimum wages and unpaid overtime wages under 29 U.S.C. § 216(b);

b. Award liquidated damages under 29 U.S.C. § 216(b);

c. Award reasonable attorneys' fees under the Fair Labor Standards Act;

d. Award costs of suit under 29 U.S.C. § 216(b);

e.  Award pre-judgment interest;

f.  Award damages including wages or other compensation lost as a result of the misclassification; and

g.  Grant any further relief that the Court may deem just and equitable.

Dated: October 17, 2014                Respectfully submitted,

/s/ Jonathan P. Lemann

By:  _____

**Couhig Partners, LLC**
Robert E. Couhig, Jr., TX #04877400
Jonathan P. Lemann, TX #24054333
1100 Poydras Street, Ste. 3250
New Orleans, LA  70163
Tel: 504-588-1288; Fax: 504-588-9750
*lemannjp@couhigpartners.com*

**HEARIN, LLC**
Jesse B. Hearin, III, *PHV Forthcoming*
La. Bar Roll No. 22422
1009 Carnation Street, Suite E
Slidell, Louisiana 70460
Tel:    985-639-3377; Fax 877-821-8015
Email: jbhearin@hearinllc.com

**STUEVE SIEGEL HANSON LLP**

George A. Hanson, *PHV Forthcoming*
MO Bar No. 43450
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel:    816-714-7100; Fax: 816-714-7101
Email:  hanson@stuevesiegel.com

Ryan D. O'Dell, *PHV Forthcoming*
CA Bar No. 290802
500 West C Street, Suite 1750
San Diego, California 92101
Tel:    619-400-5826; Fax:  619-400-5832
Email: odell@stuevesiegel.com
*Attorneys for Plaintiffs*