# Exhibit 3

LEXSEE


Positive
As of: Jun 12, 2015

**CHRISTIE CRAVEN, On Behalf of Herself and All Others Similarly situated, Plaintiff, vs. EXCEL STAFFING SERVICE, INC., EXCEL STAFFING PROFESSIONAL NURSING, INC., DAVID J. TOLIN, INDIVIDUALLY, and FREDERICK TOLIN, INDIVIDUALLY, Defendants.**

**CIVIL ACTION H-12-2860**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

**2014 U.S. Dist. LEXIS 11668**

**January 30, 2014, Decided
January 30, 2014, Filed**

**PRIOR HISTORY:** Craven v. Excel Staffing Serv., 2013 U.S. Dist. LEXIS 29661 (S.D. Tex., Mar. 4, 2013)

**CORE TERMS:** similarly situated, notice, nurse, overtime, collective action, business purpose, discovery, entity, hours per week, willful violations, staffing, commerce, nursing, amend, overtime compensation, cause of action, class members, establishment', willfully, exemption, putative, unified, pleading stage, citations omitted, years prior, failing to pay, decertification, certification, conditionally, auxiliary

**COUNSEL:** [*1] For Christie Craven, Plaintiff: David G Langenfeld, Dunham Jones, Austin, TX.

For Excel Staffing Service, Inc., Excel Staffing Professional Nursing, Inc., David J Tolin, Frederick Tolin, Defendants: Yvette Vanessa Gatling, Littler Mendelson PC, Houston, TX.

**JUDGES:** MELINDA HARMON, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** MELINDA HARMON

**OPINION**

**OPINION AND ORDER**

Pending before the Court in the above referenced putative collective action under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq.*, seeking overtime compensation, liquidated damages, attorney's fees, costs, pre-judgment and post-judgment interest, and injunctive relief for willful violations of the statute, is Defendants Excel Staffing Service, Inc., Excel Staffing Professional Nursing, Inc., David J. Tolin, and Frederick Tolin's motion to dismiss (instrument #24) Plaintiff Christie Craven's First Amended Complaint (#22) pursuant to Federal Rule of Civil Procedure 12(b)(6).

**Standard of Review under Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." When a district court reviews [*2] a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius,* 635 F.3d 757, 763 (5th

Cir. 2011), *citing* Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 . . . (1957)["a complaint should not be dismissed [*3] for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009). The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556. Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 129 S. Ct. at 1940, the Supreme Court observed that Rule 8 "does not unlock the [*4] doors of discovery for a plaintiff armed with nothing more than conclusions."; and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949. "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825, 127 S. Ct. 181, 166 L. Ed. 2d 43 (2006).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the [*5] court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion. [citations omitted]"). The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).

**Substantive Law**

Under 29 U.S.C. § 207, an employer violates the FLSA if it fails to pay covered employees at least one and one half times their normal wage rate for hours they work in excess of 40 hours per week. Under 29 U.S.C. § 216(b), an employer who violates the FLSA shall be liable for "unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."

An employer is defined broadly as including "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "'The [*6] overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984), *quoting Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983). The First

Amended Complaint states that during the three years prior to the filing of this suit Frederick Tolin served as President of Excel Staffing and David J. Tolin served as Vice President. It alleges that as officers, directors and owners of Excel Staffing and Excel Professional, they "exercised control over the finances, policy and business practices of these entities. #22, ¶¶ 5.27 and 5.28.

Plaintiff here sues the four Defendants as her "employers, or joint employers." #22 at p. 1. The FLSA defines an "enterprise" as

> the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments by one or more corporate or other organizational units including departments of an establishment [*7] operated though leasing agreements.

29 U.S.C. § 203(r)(1). *See* Orozco v. Plackis, No. A-11-703 LY, 2012 U.S. Dist. LEXIS 26333, 2012 WL 681462, at *3 (W.D. Tex. Feb. 29, 2012). The Fifth Circuit affirmed a district court's order of summary judgment that relied on the Code of Federal Regulations to further define these terms under FLSA. 2012 U.S. Dist. LEXIS 26333, [WL] at *3-4, *citing* Reich v. Bay, Inc., 23 F.3d 110, 114-16 (5th Cir. 1994). In *Reich*, the Fifth Circuit held that to prove that two entities functioned as a single enterprise under § 203(r), which is a question of law, a plaintiff must show that these entities "(1) engaged in related activities; (2) were a unified operation or under common control; and (3) shared a common business purpose." 23 F.3d at 114. Since the FLSA does not define "related activities," in *Reich* the district court used the definition in 29 C.F.R. § 779.206:

> [A]ctivities will be regarded as 'related' when they are the same or similar or when they are auxiliary or service activities such as warehousing, bookkeeping, purchasing, advertising, including, generally, all activities which are necessary to the operation and maintenance of the particular business . . . .

Reich, 23 F.3d at 114. 29 C.F.R. § 779.221 aided [*8] the district in defining "common control":

> The word "control" may be defined as the act of fact of controlling; power or authority to control; directing or restraining domination. "Control" thus includes the power or authority to control . . . . [It] includes the power to direct, restrict, regulate, govern, or administer the performance of the activities. "Common' control includes the sharing of control and it is not limited to sole control or complete control by one person or corporation. "Common" control therefore exists where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together.

Id. at 114-15. In determining whether two entities were under common control, the key issue is "whether a common entity has the power to control the related business operations," such as individuals holding positions of control in both companies or owning both companies. Id. at 115, quoting Donovan v. Easton Land & Development, Inc., 723 F.2d 1549, 1552-53 (11th Cir. 1984). Or there may be a unified operation where the two entities each benefitted from their unification, such as one saving money or rent [*9] or recruitment costs because the other performed certain functions for it. *Id.*

A "common business purpose" is present if "the separate corporations engaged in complementary businesses, and were to a significant degree operationally independent." Id. at 115-16, *citing* Donovan v. Grim Hotel Co., 747 F.2d at 971 (The unified operation of the hotels, their related activities and interdependencies, the centralization of control in Alberding, the centralization of ownership in the Alberding family-all these are indicators of common business purpose. They establish '[m]ore than a common goal to make a profit.'"), and Brennan v. Veterans Cleaning Serv., Inc., 482 F.2d 1362, 1367 (5th Cir. 1973)("the high degree of interdependence shown between the three corporations in their day to day operations and in the public image that they sought to create" show "the defendants' businesses are auxiliary to each other. . . . More than a common goal to make a profit, however, must be shown to satisfy the requirement [of a common business purpose]. Many of the considerations relevant in determining whether businesses perform 'auxiliary or service activities' are also relevant in ascertaining whether they [*10] have a

common business purpose.")(citations omitted).

An "employee" is statutorily defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA covers employees "engaged in commerce or in the production of goods for commerce . . . or . . . employed in an enterprise engaged in commerce or in production of goods for commerce." 29 U.S.C. § 207(a)(1). FLSA may be invoked by either individual employee or enterprise coverage. *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992).[1]

> 1    To clarify the different meaning of "employer," "establishment," and "enterprise," the Fifth Circuit cited the Secretary of Labor's interpretation": "In general, 'employer' is usually a person; 'establishment' is a place of business; and 'enterprise' is the business itself, a number of related activities done for a common business purpose." *Martin*, 955 F.2d at 1032-33, *citing* 29 C.F.R. § 779.203 (1990).

Title 29 U.S.C. § 203 defines "to employ" as including "to suffer or permit to work." Employee status is determined by an "economic reality" test, i.e., "whether the alleged employee . . . is economically dependent upon the business to which he or she renders his or her services." *Herman v. Express Sixty-Minutes Delivery Service, Inc.*, 161 F.3d 299, 303 (5th Cir. 1998). [*11] The court must "determine whether the individual is, as a matter of economic reality, in business for himself or herself. *Id.* Among the factors that the court may use to make this decision, with none determinative, are (1) the degree of control exercised by the purported employer; (2) the extent of the investments of the alleged employee and the alleged employer; (3) the degree to which the worker's opportunity for profit and loss is determined by the purported employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationships. *Id.*

"'Whether a party is an employer or joint employer for purposes of the FLSA is essentially a question of fact[.]'" *Tullous v. Texas Aquaculture Processing Co., LLC*, 579 F. Supp. 2d 811, 820 (S.D. Tex. 2008), *quoting Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir. 1983). In *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012), the Fifth Circuit opined that in deciding whether an individual or entity is an employer, with no single factor being dispositive, the court should consider whether the purported employer "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee [*12] work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.[2]

> 2    Adopted in *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990).

Title 29 U.S.C. § 211(c) requires that the employer "make, keep and preserve such records of the persons employed by him and of the wages, hours, and other conditions of employment maintained by him."

Moreover any person who repeatedly or willfully violates Section 206 or 207, relating to wages, shall be subject to a civil penalty not to exceed $1,100 for each such violation." 29 U.S.C. § 216(e)(2). Under FLSA, a violation is "willful" if the employer "'either knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute.'" *Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2002), *quoting Reich,*, 23 F.3d at 117, *quoting McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988). The plaintiff bears the burden of demonstrating that the FLSA violation was willful. *Id.* Under 29 U.S.C. § 255(a), a cause of action for unpaid overtime under the statute "shall be forever barred unless commenced within two years after the cause of action accrued, except that a [*13] cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."

Section 216(b) permits one or more employees to pursue a collective action in a representative capacity on behalf of persons who are "similarly situated" to plaintiff who "opt in" to the collective action by filing a written consent with the court. 29 U.S.C. § 216(b).

Section 207(a) does not apply to those "employed in bona fide executive, administrative, or professional capacity." *Rainey*, 314 Fed. Appx. at 694-5, *citing* 29 U.S.C. § 213(a)(1). Exemption is narrowly construed against the employer, and the employer bears the burden of demonstrating that an employee is exempt. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir. 2002), *citing Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990). Whether an employee is exempt or not exempt under FLSA is mainly a fact issue determined by his salary and duties and applications of the factors in 29 C.F.R. § 541.200(a), but the ultimate decision is a question of law. *Lott v. Howard Wilson*

*Chrysler-Plymouth, Inc.*, 203 F.3d 326, 330-31 (5th Cir. 2000); *McKee v. CBF Corp.*, 299 Fed. Appx. 426, 429 (5th Cir. Nov. 17, 2008). [*14] For a discussion of exemptions *see, e.g., Thibodeaux*, 328 F.3d 742; *Vela*, 276 F.3d 659. A number of courts have analyzed whether nurses fall into the "professional exemptions" category under the FLSA. *See, e.g., Sealey v. EmCare, Inc.*, Civ. A. No. 2:11-CV-00120, 2013 U.S. Dist. LEXIS 5536, 2013 WL 164040 (S.D. Tex. Jan. 14, 2013); *Belt v. EmCare, Inc.*, 351 F. Supp. 2d 625 (E.D. Tex. 2005), *aff'd and remanded*, 444 F.3d 403 (5th Cir. 2006), cert. denied, 549 U.S. 826, 127 S. Ct. 349, 166 L. Ed. 2d 43 (2006); *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990 (E.D. Tex. 2011).

**Allegations of the First Amended Complaint (#22)**

Plaintiff states that she has been employed as a nurse for Defendants. She claims that for the three years prior to the filing of this action, Defendants, operating in the nurse staffing industry and recruiting nurses and referring them to nursing homes and other health providers, willfully violated the FLSA by failing to pay her and similarly situated employees one and half times their regular rate of pay for overtime hours in excess of forty hours per week. Defendants employ individuals with job titles of Nurse, Private Duty Nurse, or Traveling Nurse, who Plaintiff claims are similarly situated to her, with the primary [*15] function of all these employees to provide nursing services to Defendants' clients at facilities operated by Defendant or at the homes of the clients' patients. Defendants maintain and exercise the power to hire, fire and discipline them, assign employees to health care providers to provide nursing services, and determine the employees' hourly rates and their work hours. Plaintiff states that she and similarly situated employees have been misclassified as "independent contractors," but that they actually are non-exempt workers under the FLSA.

Plaintiff's collective action is brought on behalf of all persons who worked for Defendants as a Nurse, Private Duty Nurse, Traveling Nurse, or other job titles, all of whom provided nursing services to Defendants' clients at the facilities or homes of Defendants' clients, performing substantially similar job duties as Plaintiff, at any time three years prior to the filing of this lawsuit, to the entry of judgment, and who were not paid "proper overtime compensation for all hours worked beyond forty per week." #22, ¶¶ 7.2, 7.3. She claims "Defendants' pattern of failing to pay overtime compensation as required by the FLSA results from Defendants' [*16] general application of policies and practices, and does not depend on the personal circumstances of the Plaintiff and the Collective Class." *Id.* at ¶ 7.8. She states, "Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts." *Id.* at ¶ 7.9. Plaintiff also alleges that Defendants violated the FLSA in failing to maintain accurate employee pay records, including the number of hours worked per week by Plaintiff and similarly situated employees.

**Defendants' Motion to Dismiss (#24)**

Defendants contend that Plaintiff fails to plead coverage under the FLSA or willful violations of the statute by Defendants, but has made only generalized, boilerplate, and conclusory allegations, a bare-bones repetition of the statutory elements and definitions, unsupported by specific facts. *See, e.g., Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007)(granting motion to dismiss FLSA overtime claim where plaintiff "merely alleged that he worked 'beyond 40 hours per week'" for failure to plead overtime pay provision for violation of § 7 of FLSA). Such threadbare allegations are not entitled to a presumption of truth and are [*17] insufficient to state a plausible claim under the FLSA.

Moreover, because Plaintiff has filed to plead a plausible claim for a willful violation, she is not entitled to the three-year statute of limitations.

**Plaintiff's Response (#25)**

Plaintiff insists she has pleaded many facts from which the Court can infer that Plaintiff and Defendants were each engaged in interstate commerce. She further maintains that her claims for overtime meet the pleading standard of courts of the Southern District of Texas. *Hoffman v. Cemex, Inc.*, No. Civ. A. H-09-3144, 2009 U.S. Dist. LEXIS 114130, 2009 WL 4825224 (S.D. Tex. Dec. 8, 2009)(citing *Qureshi v. Panjwani*, Civ. A. No. H-08-3154, 2009 U.S. Dist. LEXIS 48142, 2009 WL 1631798 (S.D. Tex. June 9, 2009))(employees stated a plausible claim and gave the employer fair notice when they alleged they did not fall under any exemption to the FLSA's overtime provisions and that they regularly worked more that forty hours per week but were paid their regular rate for overtime hours; "plaintiffs need not plead facts to support the propriety of a collective action

Page 5

to survive a Rule 12(b)(6) motion" but further detail will be required for conditional certification and issuance of notice to the class, and an "even more searching [*18] inquiry will be performed if Cemex later moves for decertification).

Plaintiff also contends that courts in this district have found sufficient an allegation that Plaintiff was misclassified as an independent contractor rather than an employer, resulting in nonpayment of her work of forty hours at overtime rate. McCollim v. Allied Custom Homes, Inc., Civ. A. No. H-08-3754, 2009 U.S. Dist. LEXIS 34989, 2009 WL 1098459 (S.D. Tex. Apr. 23, 2009); Neman V. Greater Houston All-Pro Auto Interiors, LLC, Civ. A. No. 4:11-cv-03082, 2012 U.S. Dist. LEXIS 34069, 2012 WL 896438 (S.D. Tex. Mar. 14, 2012). See also McCollim, 2009 U.S. Dist. LEXIS 34989, 2009 WL 1098459 at *4 (finding adequate for pleading a willful violation and the 12(b)(6) stage the allegation that "Plaintiff frequently worked in excess of 40 hours per week" and that "by failing to pay Plaintiff the legally mandated overtime premium . . . Defendants acted willfully and with reckless disregard of the provisions of the FLSA ...."

**Court's Decision**

This Court agrees with Plaintiff that at this stage of the litigation her Amended Complaint is sufficient to state a claim under FLSA. No motion for conditional certification has been filed. This litigation is at the pleading stage, *before* the two-stage approach for certification [*19] of collective actions that was established in Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987): (1) the "notice stage," when the Court determines, based on the pleadings and any accompanying affidavits and before the parties have conducted substantive discovery, whether to conditionally certify the class and issue notice to potential class members; followed by (2) the "decertification stage," after the discovery has been largely completed and the defendant has filed a motion to decertify, when the court conducts a fact-intensive review to determine if the claimants are similarly situated. Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir.1995), *overruled on other grounds by* Desert Palace, Inc. v. Costa, 539 U.S. 90, 91-92, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003); Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 916 n.2 (5th Cir. 2008); Blake v. Hewlett-Packard Co., No. 4:11-CV-592, 2013 U.S. Dist. LEXIS 98690, 2013 WL 3753965, at *4 (S.D. Tex. July 11, 2013). If the Court does not conditionally certify the class or if it later grants decertification, it must dismiss the opt-in employees and leave the named plaintiff to pursue his individual claims. Sandoz, 553 F.3d at 916 n.2. At the notice stage the plaintiff "bears the burden of [*20] making a preliminary factual showing that other similarly situated individuals exist such that the court should provide notice of the action to putative class members." White v. Integrated Electronic Technologies, Inc., Civ. A. Nos. 11-2186 and 12-359, 2013 U.S. Dist. LEXIS 83298, 2013 WL 2903070, at *3 (E.D. La. June 13, 2013). Even at the notice stage, usually, because discovery has not yet occurred, "a fairly lenient standard" is applied and courts do not review the underlying merits of the action in deciding whether to conditionally certify the class. Mooney, 54 F.3d at 1214 n.8 Walker v. Honghua America, LLC, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012). Generally courts require only a minimal showing that (1) there is a reasonable basis for the plaintiff's allegations, (2) that the aggrieved putative class members are similarly situated with regard to the claims and defenses asserted, and (3) that these individuals desire to opt-in to the suit. Id. at 465-66, citing Aguirre v. SBC Communications, Inc. ("Aguirre I"), No. Civ. A. H-05-3198, 2006 U.S. Dist. LEXIS 22211, 2006 WL 964554, *5 (S.D. Tex. Apr. 11, 2006). Some courts do not require the third element, which is not mentioned in § 216(b).[3]

> 3   In Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 519 (5th Cir. 2010), [*21] the Fifth Circuit observed that although it had "not yet ruled on how district courts should determine whether plaintiffs are sufficiently 'similarly situated' to advance their claims together in a single § 216(b) action," if a court chooses to apply the *Lusardi* approach, it should proceed as follows:
>
>> First, the court determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class. If they are, notice is sent and new plaintiffs are permitted to "opt in" to the lawsuit. Second, after discovery is largely complete and more information on the case

is available, the court makes a final determination of whether all plaintiffs are sufficiently similarly situated to proceed together in a single action.

*Id.*, citing *Mooney*, 54 F.3d at 1213-14. Although *Mooney* dealt with claims under the Age Discrimination in Employment Act ("ADEA"), it is relevant to a FLSA collective action because the ADEA expressly incorporates § 216(b) of the FLSA for an opt-in procedure for class actions. *Mooney*, 54 F.3d at 1212.

At the pleading stage, in *Rodriguez v. Gold & Silver Buyers, Inc.*, Civ. A. No. 4:12-CV-1831, 2013 U.S. Dist. LEXIS 136332, 2013 WL 5372529, at *3 (S.D. Tex. Sept. 24, 2013), [*22] this Court relied on *Hoffman*, 2009 U.S. Dist. LEXIS 114130, 2009 WL 4825334 at *3, and *Qureshi*, 2009 U.S. Dist. LEXIS 48142, 2009 WL 1631798 at *3 ("finding plaintiffs' allegations that they were nonexempt, regularly worked more than forty hours per week, and were not paid time-and-a-half to be factual allegations and not legal conclusions") to deny a Rule 12(b)(6) motion. It does so here.

As for the allegation that Defendants willfully violated the FLSA, that matter contains questions of fact, and at this pleading stage prior to discovery the motion to dismiss it is premature. *See, e.g., Allen v. Coil Tubing Services, LLC*, 846 F. Supp. 2d 678, 712-13 (S.D. Tex. 2012); *Albanil v. Coast 2 Coast, Inc.*, 2008 U.S. Dist. LEXIS 93035, 2008 WL 4937565, at *8 (S.D. Tex. 2008)("FLSA plaintiffs are not required to prove willfulness without the benefit of discovery.")(and cases cited therein).

Accordingly, the Court

ORDERS that Defendants' motion to dismiss (#24) is DENIED.

**SIGNED** at Houston, Texas, this 30th day of January, 2014.

/s/ Melinda Harmon

MELINDA HARMON

UNITED STATES DISTRICT JUDGE